LINDA WENDELL HSU (SBN 162971)
lhsu@selmanlaw.com
SELMAN LEICHENGER EDSON HSU NEWMAN & MOORE LLP
33 New Montgomery, Suite 1850
San Francisco, CA 94105-4537
Telephone: 415.979.0400
Facsimile: 415.979.2099

Attorneys for Plaintiff
SCOTTSDALE INSURANCE COMPANY

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTTSDALE INSURANCE COMPANY, an Ohio Corporation,<br><br>Plaintiff,<br><br>v.<br><br>AGRIGENIX, LLC, a Delaware limited liability company; SEAN MAHONEY, an individual; IRMA EDMONDS, Chapter 7 Trustee; DEERPOINT GROUP, INC., an Illinois Corporation; and DOES 1 through 100, inclusive,<br><br>Defendants. | CASE NO. 1:23-CV-01548-EPG<br><br>**SCOTTSDALE INSURANCE COMPANY'S APPLICATION FOR DEFAULT JUDGMENT AS TO DEFENDANTS AGRIGENIX, LLC AND SEAN MAHONEY**<br><br>Noting Date: May 17, 2024<br><br>Amended complaint Filed: January 8, 2024<br>Trial Date: Not scheduled |

Plaintiff, SCOTTSDALE INSURANCE COMPANY, an Ohio Corporation ("SCOTTSDALE"), hereby applies for entry of a default judgment in its favor and against defendants, AGRIGENIX, LLC ("AGRIGENIX") and SEAN MAHONEY ("MAHONEY") (collectively the "INSUREDS"), under Rule 55(b)(2) of the Federal Rules of Civil Procedure. The application is made upon the grounds that these defendants were served with the complaint herein but failed to file a responsive pleading, the Clerk entered the defendants' default, and SCOTTSDALE is entitled to judgment as a matter of law.

In this application, SCOTTSDALE seeks a default declaratory judgment stating that it has no obligation to provide indemnity coverage for any damages awarded to defendant DEERPOINT GROUP, INC. ("DEERPOINT") in *Deerpoint Group, Inc. v. Agrigenix, LLC., et al.,* USDC Eastern District, Case No. 1:18-cv-00536-AWI-BAM ("UNDERLYING LAWSUIT").

SCOTTSDALE'S application is based on the following:

1. The clerk entered the default of AGRIGENIX and SEAN MAHONEY on March 28, 2024 (ECF 22 & 23).

2. The declaration of Linda Wendell Hsu ("Hsu Decl.") filed herewith establishes:

   a. that MAHONEY is not in military service and is neither a minor nor an incompetent person;

   b. that SCOTTSDALE is entitled to partial judgment against the INSUREDS on SCOTTSDALE'S declaratory relief claims—that is, SCOTTSDALE'S insurance policies do not require SCOTTSDALE to indemnify the INSUREDS in the UNDERLYING LAWSUIT; and

3. SCOTTSDALE is not seeking monetary damages in this action, and does not contend it is entitled to attorneys' fees.

4. This Application is based upon the declaration of Linda Wendell Hsu, filed herewith, and the pleadings and files in this action.

DATED: April 30, 2024
SELMAN LEICHENGER EDSON
HSU NEWMAN & MOORE LLP

By: */s/ Linda Wendell Hsu*

Attorneys for Plaintiff
SCOTTSDALE INSURANCE COMPANY

Selman Leichenger Edson Hsu Newman & Moore LLP
ATTORNEYS AT LAW
380 104429 4856-1562-6921 .v2
380 104429 4892-8047-2250 .v1

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION AND SUMMARY OF APPLICATION

SCOTTSDALE INSURANCE COMPANY, an Ohio Corporation issued three consecutive primary commercial general liability ("CGL") policies and three consecutive commercial excess liability policies to AGRIGENIX (collectively the "Policies"). SCOTTSDALE seeks a judicial determination that no indemnity coverage exists for damages sought by DEERPOINT, which is the plaintiff in the UNDERLYING LAWSUIT. SCOTTSDALE agreed to defend the INSUREDS and continues to defend the INSUREDS in the UNDERLYING LAWSUIT under one of the primary CGL policies pursuant to a reservation of rights. SCOTTSDALE agreed to provide, and continues to provide, the INSUREDS with both defense counsel and independent "Cumis" counsel pursuant to California law.

In the UNDERLYING LAWSUIT, DEERPOINT seeks damages because of the INSUREDS' alleged (1) breaches of a secrecy agreement and a settlement agreement ("BREACH OF CONTRACT ALLEGATIONS"), (2) misappropriation of DEERPOINT'S confidential, proprietary, and trade secret information from its agricultural business ("MISAPPROPRIATION ALLEGATIONS"), (3) dissemination of false and/or misleading statements to the agricultural industry to the effect that AGRIGENIX'S branded fertilizer blends and foliars are federally registered trademarks when, in fact, no such registrations exist ("ADVERTISING ALLEGATIONS"), and (4) disparagement of DEERPOINT and its products and services ("DISPARAGEMENT ALLEGATIONS"). DEERPOINT alleges the following eight causes of action in the UNDERLYING LAWSUIT: (1) Trade Secret Misappropriation Under 18 U.S.C. §§ 1836 et. seq. (Defend Trade Secrets Act); (2) Trade Secret Misappropriation Under Cal. Civ. Code §§ 3426 et seq.; (3) False Advertising Under 15 U.S.C. § 1125 (a); (4) Breach of Secrecy Agreement; (5) Breach of Settlement Agreement; (6) Intentional Interference with Prospective Economic Advantage; (7) Unfair Competition Under Cal. Bus. Prof. Code §§ 17200 et seq.; and (8) Patent Infringement.

In this application, SCOTTSDALE asks the Court to enter a default judgment against the

INSUREDS confirming that SCOTTSDALE has no indemnity obligations to INSUREDS under any of the Policies in the UNDERLYING LAWSUIT.

## II. STATEMENT OF FACTS

### A. Factual Allegations in DEERPOINT'S Second Amended Complaint

On February 24, 2020, DEERPOINT filed a second amended complaint ("SAC") in the UNDERLYING LAWSUIT. ECF 6-1. The SAC alleges the following:

- MAHONEY executed (1) a valid and enforceable Secrecy Agreement with DEERPOINT upon starting his employment confirming that he would preserve the confidential nature of DEERPOINT'S confidential, proprietary, and trade secret information, and then (2) executed an updated version of that agreement on or about May 9, 2016;
- MAHONEY gained access to DEERPOINT'S central computer to access and download DEERPOINT'S confidential, proprietary, and trade secret information without DEERPOINT'S authorization removed briefcases filled with file folders or back packs and gym bags containing documents from DEERPOINT'S offices;
- MAHONEY breached the Secrecy Agreement and his employment with DEERPOINT was mutually terminated on October 4, 2017;
- On October 3, 2017, MAHONEY filed a lawsuit against DEERPOINT in Fresno County Superior Court regarding the termination of his employment. Subsequently, MAHONEY and DEERPOINT executed a Settlement Agreement and Release ("Settlement Agreement"), which included MAHONEY'S obligation to maintain the secrecy of DEERPOINT'S confidential, proprietary, and trade secret information;
- MAHONEY breached the Settlement Agreement. The allegations referenced in this paragraph regarding the Secrecy Agreement and the Settlement Agreement shall be known as the "BREACH OF CONTRACT ALLEGATIONS";
- MAHONEY utilized the misappropriated information to the benefit of AGRIGENIX'S business and the detriment of DEERPOINT'S business. Specifically, DEERPOINT contends that "MAHONEY founded AGRIGENIX on confidential, proprietary, and trade secret information that he misappropriated from DEERPOINT during the term of their employment there." The allegations set forth in this subparagraph are referred to as the "MISAPPROPRIATION ALLEGATIONS";

The SAC also alleges:

- MAHONEY and AGRIGENIX told existing DEERPOINT customers and vendors that AGRIGENIX is "the same as DEERPOINT with a twist," that DEERPOINT is failing and will lose all its customers to AGRIGENIX, and that MAHONEY is not obligated to maintain the confidential and trade secret nature of DEERPOINT'S protected information;
- These disparaging claims by AGRIGENIX and MAHONEY or their agents have been paired with statements that AGRIGENIX'S products are 20% better than DEERPOINT'S while being 20% cheaper. MAHONEY has publicly disparaged and/or caused the public disparagement of DEERPOINT in violation of the Settlement Agreement after its

execution date;

- AGRIGENIX and MAHONEY "intentionally disparaged Deerpoint within the agricultural industry, and specifically to Agriglobe, Anderson Farms, and Dalena Farms." As a result, DEERPOINT'S relationships with Agriglobe, Anderson Farms, and Dalena Farms were actually disrupted by the business disparagements in that such disparagements intentionally, wrongfully, and unlawfully induced these customers of DEERPOINT to end their economic relationship with DEERPOINT, and subsequently converted such customers to be customers of AGRIGENIX, all to the economic disadvantage of DEERPOINT. These allegations are referred to as the "DISPARAGEMENT ALLEGATIONS."

The SAC further alleges:

- AGRIGENIX and MAHONEY infringed on a patent owned by DEERPOINT and violated California's Unfair Competition Act, i.e., Cal. Bus. Prof. Code §§ 17200 et seq., by engaging in unfair business practices by knowingly making untrue or misleading statements about DEERPOINT and its products and services.

## B. Pertinent Procedural History of UNDERLYING LAWSUIT

On August 21, 2020, Scottsdale agreed to provide a defense to the Insureds in the UNDERLYING LAWSUIT under a complete reservation of rights ("ROR"). ECF 6-4. On October 21, 2020, SCOTTSDALE supplemented its ROR with additional potentially relevant language. ECF 6-5.

On April 21, 2022, DEERPOINT filed a Motion for Sanctions against the INSUREDS for their alleged failure to preserve certain electronic evidence which should have been provided in discovery, and for allegedly providing false information at AGRIGENIX'S 30(b)(6) deposition. ECF 6-6. On April 25, 2022, Agrigenix filed for Chapter 7 bankruptcy (the "Bankruptcy Action"). ECF 6-7. On May 12, 2022, AGRIGENIX'S then-independent counsel, Charles K. Manock, and the INSUREDS' then-assigned defense counsel, George L. Hampton IV, jointly filed a Motion to Withdraw as Counsel for their respective clients. ECF 6-8. As a result of the Motion for Sanctions, AGRIGENIX'S bankruptcy filing, and the Motion to Withdraw as Counsel, SCOTTSDALE issued a supplemental ROR on June 9, 2022. ECF 6-9.

On June 13, 2022, the Court granted the Motion to Withdraw. ECF 6-10. On October 31, 2022, the Court granted the Motion for Sanctions finding that the INSUREDS intentionally

spoliated evidence. ECF 6-11. As a result, the Court awarded DEERPOINT $32,500 in attorney fees and ordered the parties to provide supplemental briefing on a potential award of expert witness fees. *Id.* On December 14, 2022, the Court issued its order on the Motion for Sanctions regarding expert witness fees, which awarded $24,033.91 in expert fees to DEERPOINT. ECF 6-12. On December 27, 2022, SCOTTSDALE issued a disclaimer letter to the INSUREDS denying coverage for the award of attorney and expert fees. ECF 6-13.

On May 25, 2023, the Chapter 7 Bankruptcy Trustee, standing in the shoes of AGRIGENIX, and without notice to SCOTTSDALE, filed a Motion in the Bankruptcy Action to voluntarily (1) Compromise Claims and Interest in Property (Federal Court Civil Litigation) and (2) Approve Sale of Estate's Interest in Property. ECF 6-14. The Trustee requested that the bankruptcy court approve a settlement agreement (ECF 6-15) between her and DEERPOINT which included, among other things, the entry of a default judgment against the Insureds in the UNDERLYING LAWSUIT on the following causes of action: (1) AGRIGENIX - (a) Trade Secret Misappropriation Under 18 U.S.C. §§ 1836 et seq., (b) Trade Secret Misappropriation Under Cal. Civ. Code §§ 3426 et seq., and (c) False Advertising Under 15 U.S.C. § 1125(a); (2) The INSUREDS - (a) Unfair Competition Under Cal. Bus. Prof. Code §§ 17200 et seq., and (b) Patent Infringement. (collectively the "DEFAULTED CLAIMS").

On June 12, 2023, SCOTTSDALE issued a ROR to the Insureds reserving its rights to deny coverage for any DEFAULTED CLAIMS entered against the INSUREDS in the UNDERLYING LAWSUIT. ECF 6-16. On July 11, 2023, the bankruptcy court entered an order approving the settlement agreement between the Trustee and DEERPOINT and authorizing the entry of default judgments against the INSUREDS on the DEFAULTED CLAIMS. ECF 6-18.

On July 28, 2023, the court in the UNDERLYING LAWSUIT entered a Stipulated Entry

of Default and Dismissal of Claims and an Order Granting Stipulated Entry of Judgment and Dismissal of Claims regarding the DEFAULTED CLAIMS. ECF 6-19 & 6-20. On August 4, 2023, SCOTTSDALE issued a ROR and disclaimer to the INSUREDS denying indemnity coverage for the DEFAULTED CLAIMS. ECF 6-21. The Bankruptcy Trustee cannot object to this application as she stipulated that she (1) will cooperate with SCOTTSDALE'S prosecution of this lawsuit and (2) is bound by the final judgment entered in this lawsuit. ECF 9.

### III. THE POLICIES

SCOTTSDALE issued a Virtue Pack Service Business Package Policy to named insured Agrigenix, LLC, under Policy No. VRS0003098 for the period beginning December 14, 2017, and ending December 14, 2018. Scottsdale also issued the following renewal policies: Policy No. VRS0003658 (12/14/2018-12/14/2019) and Policy No. VRS0004255 (12/14/2019-12/14/2020) (collectively the "Primary Policies"). Ex A to Hsu Decl. As part of the Primary Policies, Scottsdale provided CGL coverage to the INSUREDS pursuant to a CGL Form (CG 00 01 04 13) ("Primary Coverage Form"). Coverage A of the Primary Coverage Form generally covers damages because of bodily injury and property damage while Coverage B generally covers damages because of personal and advertising injury. The Primary Coverage Form for each Primary Policy contains limits of $1,000,000 for Each Occurrence.

SCOTTSDALE issued a Commercial Excess Liability Policy numbered VES0002432 to Agrigenix for the period beginning December 14, 2017, and ending December 14, 2018. Scottsdale also issued the following renewal policies: Policy No. VES0002658 (12/14/2018-12/14/2019) and Policy No. VES0002931 (12/14/2019-12/14/2020) (collectively the "Excess Policies"). Ex B to Hsu Decl. As part of the Excess Policies, SCOTTSDALE provided excess liability coverage to the Insureds pursuant to a Virtue Excess Commercial Excess Liability Coverage Form (VE P 0612 (08/14)), (the "Excess Coverage Form"). The Excess Coverage Form for each policy contains limits of $5,000,000 for Each Occurrence and $5,000,000 for General Aggregate. The Excess Coverage Form generally covers the ultimate net loss in excess of the limit of the Primary Policies

because of injury or damage.

## IV. ENTRY OF DEFAULT AGAINST THE INSUREDS

SCOTTSDALE filed its amended complaint on January 8, 2024. ECF 6. SCOTTSDALE filed proofs of service as to the INSUREDS on February 1, 2024; the proofs of service confirmed that SCOTTSDALE had accomplished personal service on the INSUREDS of the summons and amended complaint on January 25, 2024. ECF 11 & 12.

Per Rule 12(a)(1)(B), the INSUREDS had 21 days to respond to the complaint. The 21 days elapsed on February 15, 2024. The INSUREDS have not filed any responsive pleadings, nor have they contacted SCOTTSDALE'S counsel regarding this action. On March 28, 2024, SCOTTSDALE filed a request for entry of default as to the INSUREDS. ECF 21. The same day, the Clerk of the Court entered the defaults of the INSUREDS. ECF 22 and 23. Following the entry of default, this Court directed SCOTTSDALE to file a motion for default judgment. ECF 24. On April 24, 2024, SCOTTSDALE's counsel notified MAHONEY that this application for default would be filed so he had an opportunity to appear and/or respond; however, MAHONEY did not respond. Ex. C to Hsu Decl.

According to publicly available information, MAHONEY was born in 1974. Hsu Decl. at ¶ 2. As such MAHONEY is not a minor. On information and belief, MAHONEY is neither incompetent nor in the military or otherwise exempt under the Soldiers' and Sailors' Relief Act of 1940. *Id.*

## V. ARGUMENT

### A. SCOTTSDALE Had the Right under the Policies to Limit Coverage and to Exclude Coverage For Risks It Chose Not To Assume

It is black letter law in California that an insurance company has the right to limit the amount and type of coverage under a policy issued by it and when it had done so, the plain language of the limitation must be respected. *Continental Casualty. Co. v. Phoenix Constr. Co.,* 46 Cal.2d 423, 432 (1956); *Shell Oil Co. v. Winterthur Swiss Ins. Co.,* 12 Cal.App.4th 715 (1993); *Westoil Terminals Co. v. Indus. Indem. Co.,* 110 Cal.App.4th 139 (2003); *Underwriters v. Carter*, 17

Cal.3d 380 (1976); *Kincer v. Reserve Ins. Co.* 11 Cal.App.3d 714 (1970).

> An insurer has a right to limit coverage in plain and understandable language, and is at liberty to limit the character and extent of the risk it undertakes to assume. The right of a company to limit its contract of coverage may not be questioned, provided the limitation is not prohibited by public policy or statute. (citations omitted)

*Kincer,* 11 Cal.App.3d at 718.

**B.    Legal Standard for Default Judgment By Court**

Federal Rule of Civil Procedure 55(b) governs applications to the court for entry of default judgment and allows a party to move for a court-ordered default following entry of default by the clerk under Rule 55(a). *Penton v. Johnson*, 2022 WL 483147, at *1 (E.D.Cal.2022).

Entry of default judgment is within the discretion of the Court. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). The Court may consider the following factors when exercising its discretion as to the entry of default judgment: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning the material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). "In applying this discretionary standard, default judgments are more often granted than denied." *PepsiCo v. Triunfo-Mex, Inc.*, 189 F.R.D. 431, 432 (C.D.Cal.1999).

**C.    Entry of Default Judgment Against the Defaulting INSUREDS is Warranted**

SCOTTSDALE has satisfied the requirements of Federal Rule of Civil Procedure 55(b). As set forth above, the clerk of the Court entered default as to the INSUREDS on March 28, 2024. Further, default judgment is warranted under each of the *Eitel* factors.

Regarding the first *Eitel* factor, most courts determine that prejudice only exists if the plaintiff will be without any other recourse for its claims. *See Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D.Cal.2003). Here, SCOTTSDALE seeks declaratory relief

as to the INSUREDS and has no other means to secure such a ruling. "There is potential prejudice where denying default judgment would deny an insurer a judicial determination as to whether it has a duty to indemnify and defend the defendant …" *Mesa Underwriters Specialty Insurance Co., v. Paradise Skate, Inc.*, No. 15CV01253YGRJSC, 2016 WL 9045622, at *3 (N.D.Cal.2016). SCOTTSDALE would be "denied the right to judicial resolution of its claim if default judgment were not entered." *Wells Fargo Bank, N.A. v. Weems*, 2016 WL 1118206, at *7 (C.D.Cal.2016).

The second and third *Eitel* factors likewise favor default judgment because SCOTTSDALE has adequately pled its eight claims for relief and each is a meritorious claim. *See PepsiCo, Inc. v. California Security Cans*, 238 F. Supp. 2d 1172, 1175 (C.D.Cal.2002) (these factors "require that a plaintiff state a claim on which the [plaintiff] may recover") (internal citations omitted).

The fourth *Eitel* factor requires the Court to consider "the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo*, 238 F. Supp. 2d at 1176; see also *Eitel*, 782 F.2d at 1471–72. Here, SCOTTSDALE seeks only a judicial declaration of its rights, not a money judgment. This factor favors entry of default judgment.

The fifth *Eitel* factor is the possibility of a dispute concerning the material facts in the case. Upon default, the well-pleaded allegations of the complaint relating to liability are taken as true. *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917-918 (9th Cir. 1987); *Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 188-189 (2nd Cir. 2015). Here, SCOTTSDALE filed a well-pleaded complaint alleging the facts necessary to establish their claims, and the clerk entered default against the INSUREDS. Thus, no dispute has been raised regarding the material averments of the complaint. The INSUREDS' failure to respond to the complaint places the fault for any doubt squarely on the INSUREDS. This factor therefore favors the entry of default judgment. Moreover, SCOTTSDALE is not seeking a judicial determination of no duty to defend; SCOTTSDALE will continue to defend the INSUREDS in the UNDERLYING LAWSUIT under a reservation of rights. As noted above, SCOTTSDALE continues to pay for two sets of counsel for the benefit of the INSUREDS per California law, defense counsel and "Cumis counsel."

Selman Leichenger Edson
Hsu Newman & Moore LLP
ATTORNEYS AT LAW

The sixth *Eitel* factor, whether the default resulted from excusable neglect, also weighs in favor of entry of default judgment. The INSUREDS were served with the complaint, and have still failed to answer, appear, or otherwise participate in the instant litigation. *See United States v. Waterbabies, LLC*, No. C 09-01719 RS, 2010 WL 289075, at *2 (N.D.Cal.2010) (finding no "excusable neglect" where the defaulting party had been served and was aware of the lawsuit, but failed to respond in any manner). In addition to being personally served with the complaint, the INSUREDS were also informed by SCOTTSDALE that default had been entered and SCOTTSDALE intended to move for default judgment. Hsu Decl. at ¶ 7. See *ACS Recovery Servs., Inc. v. Kaplan*, No. C 09-01304 JSW, 2010 WL 144816, at *7 (N.D. Cal. Jan. 11, 2010) (no excusable neglect where defendant was properly served with the summons and complaint and had the opportunity to oppose the request for entry of default and failed to do so). Despite the notice and warnings, the INSUREDS failed to respond, appear, or make any effort to defend this action. Accordingly, the INSUREDS' default did not result from excusable neglect, and therefore the sixth *Eitel* factor favors granting a default judgment.

The seventh *Eitel* factor, the strong policy favoring decision on the merits, also favors entry of default judgment, as absent the requested relief, SCOTTSDALE would be denied a decision on the merits and "held hostage" by the INSUREDS who have chosen not to participate in this litigation. The preference for judgments on the merits does not militate against entry of default judgments when a defendant fails to answer the complaint, appear or make any other effort to defend the action. *Pepsico,* 238 F. Supp. 2d at 1177 ("Defendant's failure to answer Plaintiffs' Complaint makes a decision on the merits impractical, if not impossible."); *Kloepping v. Fireman's Fund*, 1996 WL 75314 (N.D.Cal.1996) (preference for a decisions on the merits is "problematic in a case such as this in which defendant has not even responded to plaintiff's original complaint" and "not dispositive.") Thus, the seventh *Eitel* factor does not weigh against entry of default judgment against the INSUREDS in this case.

As noted above, the Trustee in Bankruptcy agreed via stipulation with SCOTTSDALE to be bound by any judicial determination of this Court with respect to the Policies. ECF 9.

11
APPLICATION FOR DEFAULT JUDGMENT BY THE COURT
CASE NO. 1:23-CV-01548-EPG

Accordingly, SCOTTSDALE is entitled to a default judgment against the INSUREDS, and such default judgement is binding in the Bankruptcy Action on the DEFAULTED CLAIMS.

**D.     The Court May Provide Declaratory Relief To SCOTTSDALE**

A court may issue an order granting declaratory relief to an insurer related to its duties to defend and indemnify as part of a default judgment. See, *Am. Nat'l Prop. & Cas. Co. v. Washington*, 2021 WL 1608952, at *4 (E.D.Cal.2021) (finding that "declaratory relief is often sought in actions between insurers and insureds to determine rights and obligations under an insurance policy" and granting declaratory relief on default judgment); *Mesa Underwriters*, 2016 WL 9045622, at *9 (insurer "is entitled to declaratory relief" against defaulted insured).

## VI. CONCLUSION

SCOTTSDALE requests the Court issue a default judgement and an order that it has no duty to indemnify the INSUREDS under the Policies with respect to the UNDERLYING LAWSUIT, and that such order is binding upon the Trustee in the Bankruptcy Action. A proposed order is attached hereto.

DATED:  April 30, 2024

SELMAN LEICHENGER EDSON
HSU NEWMAN & MOORE LLP


By: */s/ Linda Wendell Hsu*_____
     LINDA WENDELL HSU

Attorneys for Plaintiff
SCOTTSDALE INSURANCE
COMPANY